1  **JOSEPH M. MCMULLEN**
   California State Bar No. 246757
2  **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
   225 Broadway, Suite 900
3  San Diego, California 92101-5030
   Telephone: (619) 234-8467
4  Facsimile: (619) 687-2666
   Email: Joseph_McMullen@fd.org
5
6  Attorneys for Mr. Zepeda-Montes

7

8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10                  (HONORABLE MARILYN L. HUFF)

11 UNITED STATES OF AMERICA,         )   CASE NO. 08CR1275-MLH
                                     )
12            Plaintiff,             )
                                     )
13 v.                                )   STATEMENT OF FACTS AND
                                     )   MEMORANDUM OF POINTS AND
14 NAPOLEON ZEPEDA-MONTES,           )   AUTHORITIES IN SUPPORT OF
                                     )   DEFENDANT'S MOTIONS.
15            Defendant.             )
   _____  )
16

17                          **I.**

18                   **STATEMENT OF FACTS**[1]

19          On December 1, 1990, Napoleon Zepeda-Montes adjusted status to that of a Lawful

20 Permanent Resident of the United States. In 2000 and 2001, Mr. Zepeda-Montes suffered criminal

21 convictions and subsequently lost his Lawful Permanent Resident status in a hearing before

22 Immigration Judge Michael O'Leary in Eloy, Arizona on August 17, 2006. At some point prior to

23 his arrest on March 29, 2008, Mr. Zepeda-Montes' Lawful Permanent Resident Card was returned

24 to his family by mail.

25          On March 29, 2008, Mr. Zepeda-Montes presented himself to U.S. Customs and

26 _____

27          [1]Most of this statement of facts is based on information provided by the government.
   Mr. Zepeda-Montes does not admit its accuracy and reserves the right to challenge it at a later time.
28

                                                            08CR1275-MLH

Border Protection Officer Siapno at the San Ysidro Port of Entry. He provided Officer Siapno with the Lawful Permanent Resident Card that had been returned to him through the mail. He then expressed his intention to travel to La Puente, California, where he planned to reunite himself with his family upon his readmission into the United States. Officer Siapno queried the Lawful Permanent Resident Card utilizing the card reader at the inspection booth, which indicated that the card no longer authorized admission. Mr. Zepeda-Montes was sent to secondary inspection and arrested at approximately 7:00 a.m.

Mr. Zepeda-Montes informed the arresting agents that he was an insulin-dependent diabetic. He further told agents that he did not have his medication. Nonetheless, Mr. Zepeda-Montes was placed in a cell without food or his medication, and was held there for nearly six hours. At that time, federal agents initiated an interrogation that lasted well-beyond six hours from his arrest at 7:00 a.m. It was not until after the agents concluded their interrogation that Mr. Zepeda-Montes was given access to food, or an opportunity to consult a doctor about getting his needed medication.

## II.

## MOTION TO SUPPRESS MR. ZEPEDA-MONTES' STATEMENTS PURSUANT TO MIRANDA AND 18 U.S.C. § 3501

The government bears the burden of demonstrating that a defendant's statement is voluntary and that Miranda warnings were given prior to a custodial interrogation. United States v. Harrison, 34 F.3d 886, 890 (9th Cir. 1994); see also United States v. Dickerson, 530 U.S. 428, 439-41 (2000) (discussing constitutional underpinnings of Miranda v. Arizona, 384 U.S. 436, 444 (1966) and the need to safeguard "precious Fifth Amendment rights"); see also 18 U.S.C. § 3501. Unless and until the government meets this high burden in this case, Mr. Zepeda-Montes' statements must be suppressed.

A.     **The Government Must Demonstrate Compliance with *Miranda* in This Case.**

       **1. *Miranda* Warnings Must Precede Custodial Interrogation.**

The prosecution may not use statements, whether exculpatory or inculpatory, stemming from a custodial interrogation of Mr. Zepeda-Montes unless it demonstrates the use of procedural

1    safeguards effective to secure the privilege against self-incrimination. <u>Miranda v. Arizona</u>, 384

2    U.S. 436, 444 (1966).[2] Custodial interrogation is questioning initiated by law enforcement officers

3    after a person has been taken into custody or otherwise deprived of his freedom of action in any

4    significant way. <u>Id.</u> <u>See</u> <u>Orozco v. Texas</u>, 394 U.S. 324, 327 (1969).

5        Once a person is in custody, <u>Miranda</u> warnings must be given prior to any

6    interrogation. <u>See</u> <u>United States v. Estrada-Lucas</u>, 651 F.2d 1261, 1265 (9th Cir. 1980). Those

7    warnings must advise the defendant of each of his or her "critical" rights. <u>United States v. Bland</u>,

8    908 F.2d 471, 474 (9th Cir. 1990). In order for the warning to be valid, the combination or the

9    wording of its warnings cannot be affirmatively misleading. <u>United States v. San Juan Cruz</u>, 314

10   F.3d 384, 387 (9th Cir. 2003). The warning must be clear and not susceptible to equivocation. <u>Id.</u>

11   (vacating illegal entry conviction where defendant was advised of his administrative rights from an

12   I-826 form and later advised of his <u>Miranda</u> rights). If a defendant indicates that he wishes to

13   remain silent or requests counsel, the interrogation must cease. <u>Miranda</u>, 384 U.S. at 474; <u>see also</u>

14   <u>Edwards v. Arizona</u>, 451 U.S. 484 (1981). Unless and until the government shows that the agents

15   properly administered the <u>Miranda</u> warnings, the government cannot use evidence obtained as a

16   result of any custodial interrogation that occurred after Mr. Zepeda-Montes's arrest. <u>Miranda</u>, 384

17   U.S. at 479.

18       **2.  <u>The Government Must Demonstrate That Any Alleged Waiver of Mr. Zepeda-
         Montes's Rights Was Voluntary, Knowing, and Intelligent.</u>**

19

20       When interrogation occurs without the presence of an attorney and a statement is taken,

21   a *heavy* burden rests on the government to demonstrate that the defendant intelligently and

22   voluntarily waived his privilege against self-incrimination and his right to retained or appointed

23   counsel. <u>Miranda</u>, 384 U.S. at 475. It is undisputed that, to be effective, a waiver of the right to

24   remain silent and the right to counsel must be made knowingly, intelligently, and voluntarily.

25   <u>Schneckloth</u>, 412 U.S. 218. To satisfy this burden, the prosecution must introduce evidence

26   sufficient to establish "that under the 'totality of the circumstances,' the defendant was aware of 'the

27

28       [2] In <u>Dickerson v. United States</u>, 530 U.S. 428, 120 S. Ct. 2326 (2000), the Supreme Court
     held that <u>Miranda</u> rights are no longer merely prophylactic, but are of constitutional dimension. <u>Id.</u>
     at 2336 ("we conclude that <u>Miranda</u> announced a constitutional rule").

08CR1275-MLH

1    nature of the right being abandoned and the consequences of the decision to abandon it." United

2    States v. Garibay, 143 F.3d 534, 536 (9th Cir. 1998) (quoting Moran v. Burbine, 475 U.S. 412, 421

3    (1986)). The Ninth Circuit has stated that "[t]here is a presumption against waiver." Garibay, 143

4    F.3d at 536. The standard of proof for a waiver of these constitutional rights is high. Miranda, 384

5    U.S. at 475. See United States v. Heldt, 745 F.2d 1275, 1277 (9th Cir. 1984) (the burden on the

6    government is great, the court must indulge every reasonable presumption against waiver of

7    fundamental constitutional rights).  Finally, it should be noted that, since Miranda rests on a

8    constitutional foundation, see Dickerson v. United States, 530 U.S. 428, 438 (2000), no law or local

9    court rule relieves the government of its burden to prove that Mr. Zepeda-Montes voluntarily

10   waived the Miranda protections. Miranda, 384 U.S. 475.

11        The validity of the waiver depends upon the particular facts and circumstances

12   surrounding the case, including the background, experience, and conduct of the accused. Edwards

13   v. Arizona, 451 U.S. 477, 472 (1981); Johnson v. Zerbst, 304 U.S. 458, 464 (1983).  See also

14   United States v. Heldt, 745 F.2d at 1277; United States v. McCrary, 643 F.2d 323, 328-29 (9th Cir.

15   1981). In Derrick v. Peterson, 924 F.2d 813 (9th Cir. 1990), the Ninth Circuit confirmed that the

16   issue of the validity of a Miranda waiver requires a two prong analysis: the waiver must be both

17   (1) voluntary, and (2) knowing and intelligent. Id. at 820.

18        The voluntariness prong of this analysis "is equivalent to the voluntariness inquiry

19   under the [Fifth] Amendment . . . ." Id.  The second prong, requiring that the waiver be "knowing

20   and intelligent," mandates an inquiry into whether "the waiver [was] made with a full awareness

21   both of the nature of the right being abandoned and the consequences of the decision to abandon

22   it." Id. at 820-21 (quoting Colorado v. Spring, 479 U.S. 564, 573 (1987)).  This inquiry requires

23   that the Court determine whether "the requisite level of comprehension" existed before the

24   purported waiver may be upheld. Id. Thus, "[o]nly if the `totality of the circumstances surrounding

25   the interrogation' reveal *both* an uncoerced choice *and* the requisite level of comprehension may

26   a court properly conclude that the Miranda rights have been waived."  Id. (quoting Colorado v.

27   Spring, 479 U.S. at 573) (emphasis in original) (citations omitted)).

28        Under prevailing Ninth Circuit law, the government bears the burden of demonstrating

1    a meaningful <u>Miranda</u> waiver by clear and convincing evidence.  <u>See</u> <u>Schell v. Witek</u>, 218 F.3d

2    1017 (9th Cir. 2000) (en banc) (constitutional rights may ordinarily be waived only if it can be

3    established by clear and convincing evidence that the waiver is voluntary, knowing, and intelligent)

4    (citations omitted).  Moreover, this Court must "indulge every reasonable presumption against

5    waiver of fundamental constitutional rights." <u>Id.</u> (citations omitted).  Unless and until the

6    prosecution meets its burden of demonstrating through *evidence* that adequate <u>Miranda</u> warnings

7    were given and that Mr. Zepeda-Montes knowingly and intelligently waived his rights, Mr. Zepeda-

8    Montes's statements must be suppressed  <u>Miranda</u>, 384 U.S. at 479.

9    **B.      <u>The Government Bears the Burden of Proving Mr. Zepeda-Montes's Statements</u>**
      **<u>Were Made Voluntarily.</u>**

10

11       A defendant in a criminal case is deprived of due process of law if the conviction is

12   founded upon an involuntary confession. <u>Arizona v. Fulminante</u>, 499 U.S. 279 (1991); <u>Jackson v.</u>

13   <u>Denno</u>, 378 U.S. 368, 387 (1964).  This is so even when the procedural safeguards of <u>Miranda</u> have

14   been satisfied. <u>Id.</u>  The government bears the burden of proving by a preponderance of the evidence

15   that a confession is voluntary. <u>Lego v. Twomey</u>, 404 U.S. 477, 483 (1972).

16       In order to be voluntary, a statement must be the product of a rational intellect and free

17   will. <u>Blackburn v. Alabama</u>, 361 U.S. 199, 208 (1960).  In determining whether a defendant's will

18   was overborne in a particular case, the totality of the circumstances must be considered.

19   <u>Schneckloth</u>, 412 U.S. at 226.  Some factors taken into account have included the youth of the

20   accused, his lack of education, his low intelligence, the lack of any advice to the accused of his

21   constitutional rights, the length of the detention, the repeated and prolonged nature of the

22   questioning, and the use of physical punishment such as the deprivation of food or sleep. <u>Id.</u>

23       A confession is deemed involuntary whether coerced by physical intimidation or

24   psychological pressure. <u>Townsend v. Sain</u>, 372 U.S. 293, 307 (1962).  "The test is whether the

25   confession was extracted by any sort of threats or violence, [or] obtained by any direct or implied

26   promises, however slight, [or] by the exertion of any improper influence.'" <u>Hutto v. Ross</u>, 429 U.S.

27   28, 30 (1976) (<u>quoting</u> <u>Bram v. United States</u>, 168 U.S. 532, 542-43 (1897)).  <u>See</u> <u>also</u> United <u>States</u>

28   <u>v. Tingle</u>, 658 F.2d 1332, 1335 (9th Cir. 1981).

Until the government meets its burden of showing all statements of Mr. Zepeda-Montes that it intends to use at trial were voluntary, his statements must be suppressed as involuntary. 18 U.S.C. § 3501(a).

**C.      Mr. Zepeda-Montes' Statements Were Taken Outside the Six-Hour Safe-Harbor.**

Title 18 U.S.C. § 3501(c) provides a six-hour "safe-harbor" period after an arrest and before the arraignment during which a confession will not be excluded solely because of delay. "The safe harbor may be extended beyond six hours if the delay is reasonable and is due to the means of transportation and the distance to the nearest magistrate." United States v. Padilla-Mendoza, 157 F.3d 730, 731 (9th Cir. 1998) (citing United States v. Wilson, 838 F.2d 1081, 1084 (9th Cir. 1988) (emphasis added). Although confessions obtained beyond this period are not inadmissible per se, "[s]tatements made outside the six-hour 'safe harbor' *may be excluded solely for delay*." United States v. Van Poyck, 77 F.3d 285, 288 (9th Cir. 1996); see also Wilson, 838 F.2d at 1084 (9th Cir. 1988) ("Discretion remains in the trial judge, under subsection 3501(b), to exclude confessions as involuntary solely because of delay in arraignment during which a confession is given, that exceeds six hours.") (emphasis added).

The Ninth Circuit has determined that notwithstanding delay in contravention of the safe harbor, a statement may be admitted if:(1) if the delay was reasonable, or (2) if public policy concerns weigh in favor of admission. Padilla-Mendoza, 157 F.3d at 731. "The public policy concerns include discouraging officers from unnecessarily delaying arraignments, preventing the admission of involuntary confessions, and encouraging early processing of defendants." Id.

In United States v. Gamez, 301 F.3d 1138 (9th Cir. 2002), the court upheld the district court's finding that the defendant's statement given after an overnight detention was admissible under both the reasonableness and public policy standards. Id. at 1143. The defendant, a Spanish-speaking Mexican national, was arrested along with several other suspects found near the Arizona-Mexico border shortly after the fatal shooting of a Border Patrol agent. Id. at 1141. Although it would have been standard procedure for the FBI to take the defendant to the federal prison in Tuscon the night he was arrested, the FBI could not do so because all agents in the area were involved in the murder investigation. Id. at 1142. The next morning, the defendant was

1   interrogated when the first available Spanish-speaking FBI agent arrived at the Border Patrol

2   station. Id. at 1143. Given the circumstances of the shooting which involved multiple suspects,

3   "[i]t was impossible to determine with what kind of offense [the defendant] would be charged prior

4   to interrogating him." Id. Accordingly, the post-safe-harbor interrogation was both reasonable and

5   did not contravene public policy, and the court upheld the admissibility of the defendant's

6   statements. Id.

7          In contrast, the Ninth Circuit reversed the district court's finding that defendant's

8   statements during an FBI interrogation conducted more than six hours after his arrest were

9   admissible in Wilson. 838 F.2d at 1084, 1087. The defendant, who was the sole suspect in the

10  FBI's investigation of the aggravated battery of the child of his common law wife, was arrested at

11  night and detained overnight at the tribal jail. Id. at 1083. The next morning, FBI agents came to

12  the jail and conducted an interrogation of the defendant for two hours in the afternoon. Id. Because

13  he was being questioned, the defendant missed the regularly scheduled arraignment calendar on that

14  day and had to be specially arraigned in the judge's chambers. Id. The Ninth Circuit rejected as

15  clearly erroneous the district court's finding that the delay was reasonable:

16            Even assuming that the delay overnight was reasonable, there is no
              reasonable excuse why [the defendant] was not promptly arraigned at the
17            beginning of the arraignment calendar the next day. *The desire of the
              officers to complete the interrogation is, perhaps, the most unreasonable
18            excuse possible under § 3501(c).*

19  Id. at 1085 (emphasis added).

20         The court went on to find that the defendant's statements were made involuntarily

21  based on the five factors to be considered in determining voluntariness under § 3501(b), giving

22  considerable weight to the fact that the interrogation was conducted beyond the six-hour safe harbor

23  period:

24            The fact that unreasonable delay, alone, beyond six hours may support a
              finding of involuntariness suggests that unreasonable delay is the most
25            important factor of all.

26  Id. at 1086.

27  //

28  //

                                        7                          08CR1275-MLH

1        Finally, the court emphasized the importance of preventing law enforcement officers

2  from violating the six-hour safe harbor provision:

> The purposes embedded in § 3501 – to prevent confessions extracted due to prolonged pre-arraignment detention and interrogation, and to supervise the processing of defendants from as early a point in the criminal process as is practicable – are frustrated when the arraignment of a defendant who has been in custody for more than six hours is further delayed for no purpose other than to allow further interrogation of the defendant.  If we countenance the police procedure followed here, we give officers a free hand to postpone any arraignment until a confession is obtained.  That was not the legislative intent behind § 3501.  It was error to deny the suppression motion.

9  Id. at 1087.

10       Thus, except in cases in which it is impossible to properly arraign a defendant until

11  after he has been interrogated, such as in complex cases involving multiple suspects, statements

12  obtained from interrogations conducted after the six-hour safe harbor period has expired should not

13  be admitted under § 3501(c) absent a valid purpose unrelated to the Government's desire to further

14  interrogate the defendant.

15       Here, the Government has not advanced any purpose or reason for conducting Mr.

16  Zepeda-Montes' interrogation beyond the six-hour safe harbor -- thus, the delay was indeed for

17  purposes of interrogation and investigation -- precisely those purposes deemed impermissible under

18  binding authorities.

**D.**     **This Court Must Conduct An Evidentiary Hearing to Determine the Voluntariness of Mr. Zepeda-Montes's Statements.**

21       This Court must make a factual determination as to whether a confession was

22  voluntarily given prior to its admission into evidence.  18 U.S.C. § 3501(a).  Where a factual

23  determination is required, courts are obligated by Federal Rule of Criminal Procedure 12 to make

24  factual findings.  See United States v. Prieto-Villa, 910 F.2d 601, 606-10 (9th Cir. 1990).  Because

25  "'suppression hearings are often as important as the trial itself,'" id. at 609-10 (quoting Waller v.

26  Georgia, 467 U.S. 39, 46 (1984)), these findings should be supported by evidence, not merely an

27  unsubstantiated recitation of purported evidence in a prosecutor's responsive pleading.  Under

28  section 3501(b), this Court must consider "all the circumstances surrounding the giving of the

confession," including:

> (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel, and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession.

18 U.S.C. § 3501(b).

Without the presentation of evidence, this Court cannot adequately consider these statutorily mandated factors. Accordingly, Mr. Zepeda-Montes requests that this Court conduct an evidentiary hearing pursuant to 18 U.S.C. § 3501(a), to determine, outside the presence of the jury, whether any statements made by Mr. Zepeda-Montes were voluntary.

## III.

## LEAVE TO FILE FURTHER MOTIONS

As new information surfaces – via discovery provided by government, defense investigation, or an order of this court – the defense may need to file further motions, or to supplement existing motions. For this reason, defense counsel requests leave to file further motions.

## IV.

## CONCLUSION

For the reasons stated, Mr. Zepeda-Montes requests that this Court grant his motions.

Respectfully Submitted,

Dated: August 19, 2008

_____/s/ Joseph M. McMullen_____
**JOSEPH M. MCMULLEN**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Zepeda-Montes

1

## <u>CERTIFICATE OF SERVICE</u>

2

        Counsel for Defendant certifies that the foregoing pleading is true and accurate to the

3

best of his information and belief, and that a copy of the foregoing document has been served this

4

day upon:

5

**Stewart Young**

6

Stewart.Young@usdoj.gov; efile.dkt.gc1@usdoj.gov

7

8

Dated: August 19, 2008                    ___*/s/  Joseph McMullen*_____

JOSEPH McMULLEN

9

Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900

10

San Diego, CA 92101-5030
(619) 234-8467  (tel)

11

(619) 687-2666  (fax)
e-mail: Joseph_McMullen@fd.org

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28